Campbell, J.
An injunction order Was granted on the com» plaint of the plaintiffs, alleging that the East River Bank had purchased certain premises on the north-east corner of 3d Avenue and St. Mark’s Place, in this city, and were about tearing down the present building for the purpose of erecting a banking house, which should extend to the northerly line of Eighth street, or St. Mark’s Place, as originally laid out on the commissioners’ map, and that such building when erected would project or extend eight feet beyond the houses of the plaintiffs and others, owners of property on Eighth street, or St. Mark’s Place, between the 3d and 3d Avenues; and they further charge, that more than twenty years ago, Thomas E. Davis,then being the owner of the property on both sides of St. Mark’s Place, and being desirous of selling the same, or portions, and erecting, or causing to be erected, houses thereon, and to sell the same, agreed and stipulated that the north line of said street should virtually be extended eight feet farther north; that all the houses should be built upon such new line, reserving the intervening space between said line and the north line of the *616 street, as originally laid out, as a court-yard; and further, in pursuance of said agreement, and in conformity thereto, all the houses were placed back eight feet, including the one in question, and that this was done nearly or quite twenty years ago. The complaint further states, that the houses on this street are large and expensive, and the value of property on the street and its locality much increased by reason of these open court-yards, and this virtual increase in the width of the street; and they insist, that the space of eight feet was set apart and dedicated to the use of the public, and cannot be reclaimed. The defendants in their affidavits say that they do not believe any such agreement or stipulation was made by Mr. Davis, and they urge as a reason, that before the time of the alleged making of the agreement, he conveyed the property in question to one Mr. Henriques, and that by such conveyance the south boundary of the premises was the northerly line of Eighth street, as laid down, and not the new line sought to be established, eight feet to the north of such original north line of the street. .They further show, that the premises, after the erection of the present buildings thereon, or about that time, were mortgaged by the then owner to the Jackson Marine Insurance Company, and that in and by such mortgage the southerly line of the property was described as the north line of the street, as laid down ; and further, that on a foreclosure of such mortgage the master’s deed conveyed to the said Insurance Company the premises as described in the mortgage; that the Insurance Company conveyed to the grantor of the defendants by the same boundary, and that such grantor by the same boundary conveyed to the defendants; and that throughout, in all the chain of conveyances, for more than twenty years the uniform description of the premises bounded them on the southerly side by the northerly line of the street. The defendants fix 1834 as the period when the mortgage was executed to the Insurance Company, and urn der which the company afterwards obtained title; and the defendants state, that at this time, 1834, no buildings had been erected on the premises. In 1837 the Insurance Company obtained by a sale Under a foreclosure the fee of the property, and in 1844 they sold the premises to Caleb 0, Halsted, the defendant’s grantor. In the conveyance to Halsted there is the *617 following clause : “ The premises hereby conveyed, including a certain court-yard of about 8 feet in width, laid off along the southerly side thereof.” The complaint charges, that the deed from Mr. Halsted to the defendants contained a clause making the grant to the said defendants “ subject to all existing restrictions and covenants in relation to keeping the said space or court-yard perpetually open as such court-yard or street.”
It is denied by the defendants that there is such a clause. The deed was used on the argument, and the clause in question, as contained in the deed, I do not find in the papers before me, but it Was, as I understood, in substance, that the grant was subject to such covenants or restrictions, if any existed.
It does not seem to me to be very material, whether the claim was as contended for by the plaintiffs, or as set forth in the deed. The important question is, whether there was an original agreement, and if so, what was it ? As a matter of fact, I entertain no doubt on the subject. So far as the proof is before me, it is not full and complete ; and, yet the circumstances actually existing are of a marked, and, it seems to me, an unanswerable character; A new street was improved ; elegant and expensive houses were erected, extending from avenue to avenue (except the premises in question), all set back eight feet, and all using that space for a court-yard. Mr. Davis was the owner and builder of these houses , he was the former owner of the premises in question. The premises in question, when improved, were made to conform to the plan of all the other houses. When the first deed thereafter is given, that is, after the erection of the buildings, mention is made of the court-yard, as being a part of the premises included in the conveyance. The mortgage to the Insurance Company, and which was probably given before the erection of the building, contained no reference to a court-yard, as then none existed. The master’s deed, of course, followed the description in the mortgage. When, however, the Insurance Company convey, mention is made of this court-yard. Special notice is made that the boundaries include this court-yard. It is, I apprehend, the same mode which would be adopted in any other conveyance of premises in St. Mark’s Place. The property would be conveyed as located on the original north line of the street, *618 and the conveyance would include the court-yard in front. The owner may also own this court-yard in fee, subject, however, to one certain servitude—subject to the right of hia neighbor to insist that he shall use it for no other purpose.
recurring again to the complaint, and to the affidavit on which the motion is made to dissolve the injunction,—the complaint alleges expressly, that there was no agreement that all the buildings should be set back eight feet. The affidavit says that the defendants do not believe that such agreement waa made. My own opinion is, from the facts and circumstances set forth in the complaint and affidavits, that such an agreement was made, and that it is binding on the defendants. It may have been by parol, but it was executed—carried into effect by the erection of the buildings eight feet hack on the whole block. It is not the case of Wolf v. Frost (4 Sand. Ch. R. 72), when such an agreement, unexecuted, was sought to be enforced. It is one thing to enforce such an agreement when made by parol; it is another, to attempt to violate it after it has been executed. Intent may always enter largely into questions of dedication, and where the intent is manifested by an agreement executed, the time becomes, comparatively, immaterial. In respect to all these houses and lots on St. Mark’s Place, it seems to me that they must be considered each with respect to the others as a servient tenement, to the extent of the space in front, denominated a court-yard.. It is a species of easement, which each owner enjoys in the property of his neighbor.
The motion to dissolve the injunction must be denied, with ten dollars costs, and an order may he entered, continuing the injunction until the hearing of the cause.
Affirmed, on appeal, at general term,