Robertson-, Ch. J.
Besides grants of easements in a piece of land to the public by dedication, or to the owners of other lands by grant, the rights generally appertaining to the ownership of land may be subjected to the control of others, having no interest otherwise therein, than by covenants between the owners of such servient and such dominant tenements. For although at law such a covenant is only an executory contract, in equity it seems to be treated as executed and conferring rights, which may be enforced there by specific performance ; and even parol agreements of a similar kind have been enforced when mutual, and carried into effect by some of the parties thereto. (Tallmadge v. East River Bank, 2 Duer, 614. S. C. on app. 26 N. Y. Rep. 105. S. C. sub. tit. Maxwell v. East River Bank, 3 Bosw. 124.) And notwithstanding it could not be considered in the light of a covenant running with the land, (Tulk v. Moxhay, 11 Beav. 571,) inasmuch as it affects two separate pieces of land, yet it is not to be treated as a mere personal covenant in regard to either party, but may be enforced in favor of all who derive title from the covenantee to the dominant tenement or that for whose benefit such covenant is made, against all who take title from the covenantor to the servient tenement (or that whose use is restricted) with knowledge of such covenant. (Mann v. Stephens, 15 Sim. 377. *651 Tulk v. Moxhay, 11 Beav. 571. 2 Phillips, 574. Whitman, v. Coies, 23 Eng. L. and Eg. 588 n. Hills v. Miller, 3 Paige, 254. Barrow v. Richard, 3 Ed. Ch. 96. S. C. 8 Paige, 351. Birdsall v. Tiemann, 12 How. Pr. 551.) This doctrine seems to be established upon the principle that otherwise grantees of the covenantee would have no remedy at law by an action in their own name for damages, and the covenantee would only be entitled to nominal damages, after he had parted with his interest in the land to be benefited. (Barrow v. Richard, ubi supra.) Of course, in all cases where such covenants are specifically enforced, there must be a dominant tenement whose owner is to be benefited by their being kept, and it must be in a position to be so benefited ; otherwise the covenant would be merely personal. The reason, for enforcing rights arising from such covenants, is entirely distinguishable from that for protecting a legal easement against interruption, (Brouwer v. Jones, 23 Barb. 153;) or the right of the public originating in a dedication, when infringed upon, (Trustees of Watertown v. Cowen, 4 Paige, 510. Hills v. Miller, 3 Paige, 254;) in both of which cases there is a remedy at law. The rights and obligations of the parties to such covenants being, even in equity, dependent entirely on their terms, and not on the amount of injury from any violation of them, parol evidence is unnecessary and inadmissible to show either great or slight injury from such violation. (Steward v. Winters, 4 Sand. Ch. 589.)
In the case before me, it is true the parties, although chargeable with notice of the original covenant, (Coles v. Sims, 23 Eng. Law and Eg. 588, n.) do not claim title to these lands under the covenantor and the covenantee .in the covenant in question, severally, but under a person who derived title from the latter alone. But the deeds to both of them are made subject to such covenants, although their common source of title parted with the land conveyed to the plaintiff before he had conveyed to the defendant; and, therefore, although not without some misgiving, I am inclined to think the plaintiff is entitled to enforce such covenant against the defendants.
*652 Another difficulty presents itself in the.fact that thé plaintiff's house itself violates the original covenant, according to his interpretation of it; and it has been held that generally a party so situated would not be entitled to any relief in equity, (Duke of Bedford v. British Museum, 2 M. & K. 552; Roper v. Williams, 1 Turn. & R. 18; Patching v. Dubbins, 1 Kay, 1; S. C. 23 Eng. Law and Eq. 609,) upon the principle that he who seeks equity must do equity ; but in this case both parties derive title from the same person, and their rights and obligations towards each other depend entirely upon their dealings with him, and his conduct. At the time he sold the plaintiff his house, he had, if ever, already violated all the covenants entered into before he acquired title, and it must be held that so far as any relations were created between the parties who derived title from him, he intended to modify the original covenant to that extent; so that whatever rights third persons claiming title from the original covenantee might have against his grantees, as between each other the. rights of the latter should be modified by the actual state of the buildings, as the plaintiff could hardly have been required to take down projections already existing, and conveyed to him as they were.
The most difficult question remains, however, to be solved, as to the proper interpretation of the original covenant in reference to the projection completed by the defendants since the commencement of this action. That covenant provides, (1st.) That the five feet in front of the lots in question should forever remain an open space or court. (2d.) Should not be appropriated or occupied by either an edifice or a buildiag or wall. (3d.) Should not be either built upon or obstructed, otherwise than by such steps for entrance, platforms, pedestals and iron fences or railings connected therewith and enclosing the same, as might be necessary, and the foundations and copings upon which such iron fences or railings might be placed. The first question that presents itself upon the construction of this covenant is, whether by the five feet which is reserved to remain an open court, is meant superficial dimension of ground alone, or a like space in the air, reaching from such *653 ground, to the heavens. If the latter, the defendants could no more occupy it permanently than they could the public high-. way, or even temporarily, otherwise than they could such highway ; but I think the subsequent part of such covenant confines such five feet to the ground — the terra firma—and its use. It declares that such court shall not be occupied by an edifice, or a building or wall, each of which words implies something not suspended in the air, but resting on the ground and erected upwards from it. And, finally, it provides that it should not be built upon or obstructed otherwise than by a certain kind of solid structure. The terms “ built upon ” seem to me conclusive as to the space intended being of the solid ground, and the exception of the steps for entrance, and pedestals therefrom (which are required to rest on the ground) more fully corroborates it. Particularly as the house owned by the plaintiff had at the time he bought it, steps resting on a solid wall reaching from the ground to nearly the first story. It is not difficult to suggest, according to the varying views and interests of parties, different general purposes or limitation of such right intended by such covenants. But where a covenant is so precise and elaborate as this, and its enforcement is in derogation of common right, a court can do no more than carry out the stipulation of the parties as they have expressed it. It would be too much to say that it was intended to have an unlimited sweep of air over, and access of light to, the whole of the five feet, along a smooth wall unbroken" by any projection, when there were already overhanging cornices, projecting ashlars and pedestals and a'massive structure for the support of the steps to the entrance of both houses, at the time of their conveyance. If any general purpose can be extracted from such covenant consistent with its special provisions, it must be merely that the width of .the street, so far as the main front wall of the house was concerned, should be increased five feet, and that the court yard thereby gained should not be built upon by any structure resting on the ground, except the entering steps and their appurtenances, but that blinds and their fastenings, and cornices projecting from or over the *654 windows or door, or under the ropf, and even balconies, might be permitted, provided they were not a mere evasion of the covenant. Such seems to have been the practical construction given to it, and acquiesced in for a long time. And until better advised I can see no reason for interfering with the window finally completed.
But the plaintiff is entitled to a judgment perpetually enjoinining the defendants, as they have been temporarily enjoined, with costs.