## Lawther v. Lawther

*Swope, Brown & Swope,* for libellant.

*Eugene V. Bulleit,* guardian ad litem, for respondent.

SHEELY, P. J., June 30, 1945.—Libellant has proved a good case of desertion and would be entitled to a decree of divorce unless the circumstance of respondent being a member of the armed service of the United States prevents the entry of such decree. Upon motion of libellant the court appointed an attorney as guardian ad litem to represent the interests of respondent. The guardian ad litem has filed exceptions to the master's report questioning the regularity of the service of the subpœna and the jurisdiction of the court, relying upon section 4 of the Act of April 18, 1861, P. L. 408, which prohibits service of process upon a man in service of the Commonwealth or of the United States.

Section 4 of the Act of April 18, 1861, P. L. 408, which was tacked on to a supplement to an act to revise the penal laws, was not, in terms, repealed by the Act of April 13, 1887, P. L. 23, but section 127 of the latter act contains exactly the same provisions as section 4 of

the former act. The final provision of the Act of 1887 is:

"And all other acts, or supplements, or parts thereof, inconsistent with or *supplied* by the provisions of this act, be and the same are hereby repealed." (Italics supplied.)

The Act of 1887 was a general act to provide for the organization, discipline, and regulation of the National Guard of Pennsylvania, so that the provisions of the Act of 1861 were actually repealed. The Act of 1887, in turn, was repealed by the Act of April 5, 1927, P. L. 122. This did not revive the original Act of 1861: section 97 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §597.

All the previous acts relating to the National Guard were superseded by the Act of May 17, 1921, P. L. 869, which was an act providing for the "organization, government, discipline, maintenance, and regulation of the armed land forces of this Commonwealth". Section 50 of this act (51 PS §77) provides that no civil process shall issue or be enforced against any officer or enlisted man of the Pennsylvania National Guard in the active service of this Commonwealth or of the United States, etc., and section 73 provides for the repeal of all acts or parts of acts relating to the National Guard and organized militia inconsistent therewith: see section 91 of the Statutory Construction Act of 1937, 46 PS §591.

It is thus apparent that the Act of 1861 is no longer effective and, even if it were, it has been held unconstitutional as applied to an indefinite or unreasonable exemption from service of civil process such as an exemption "during the war": Clark v. Martin, 49 Pa. 289, 301 (1865). Consequently, we may dismiss the Act of 1861 as not being applicable to this case. In so doing we realize that we have reached a conclusion contrary to that of Fister v. Bollinger, 51 D. & C. 621 (1944).

Service of process upon respondent in this case was secured by publication after two returns of non est inventus. Notice of the master's hearing was likewise given by publication. The testimony shows that respondent was a member of the Regular Army (and hence not affected by the provisions of the Act of May 17, 1921, supra) prior to 1938, and was likewise a member of the armed forces two or three years ago when libellant last heard from him. Thus, the question is raised whether the provisions of the Soldiers' and Sailors' Civil Relief Act of October 17, 1940, 54 Stat. at L. 1178 50 U.S.C. §501, prevent the granting of this divorce.

That act provides for the suspension of enforcement of civil liabilities, in certain cases, of persons in military service. Section 200, 50 U.S.C. §520, provides that if there be a default of any appearance by defendant no judgment shall be entered until plaintiff files an affidavit setting forth facts showing that defendant is not in military service, and if such affidavit is not filed no judgment shall be entered without first securing an order of court directing such entry, and no such order shall be made if defendant is in military service until after the court shall have appointed an attorney to represent defendant and protect his interest. The section further provides that the court may make such other and further order or enter such judgment as in its opinion may be necessary to protect the rights of defendant under the act. Section 201, 50 U.S.C. §521, provides that at any stage of a proceeding the court may, of its own motion, and shall, upon application to it by such person in service or some person on his behalf, stay the proceeding unless, in the opinion of the court, the ability of such person to conduct the case is not materially affected by reason of his military service.

It has been held that under this section no absolute bar has been erected to proceedings against one in mili-

tary service, though the court has discretion as to whether to postpone such proceedings: Swiderski v. Moodenbaugh, 44 Fed. Supp. 687; Craven et al. v. Vought, 43 D. & C. 482. The act is not a blanket moratorium on all litigation, but the court should equitably determine to what extent relief should be granted thereunder as an instrument to accomplish substantial justice: Davis, Exec., v. Brown, 46 D. & C. 123 (1942); and in divorce cases where service is secured by publication the court may adopt such course as law and justice demand: Brown v. Brown, 46 D. & C. 701, 703 (1942). The act may not be used as a means of legal obstruction on the part of defendant: Prisinzano v. Prisinzano, 46 D. & C. 638, 640 (1942).

In his brief, counsel for libellant states the question involved as follows:

"May a court exercise its discretion in granting a final decree of divorce where it appears that the respondent is a member of the Regular Army of the United States, stationed at all times during the proceedings within the constitutional [sic] limits of the United States to whom actual notice of the proceedings has been given, and for whom a guardian ad litem has been appointed."

The difficulty with this statement of the question involved is that it assumes the existence of facts which are not established by the testimony. There is no testimony whatever to show that respondent was at all times stationed within the United States. Libellant was asked: "Do you know his present mailing address?" and answered: "The last I heard was Camp Hood, Texas. It has been two or three years since I have heard. I heard through the Red Cross that was his address". There is also no testimony to show that actual notice of these proceedings has been given to respondent. On the same page of the testimony libellant was asked whether her husband had any knowl-

edge that there was a divorce case pending against him, and she replied: "No he doesn't." On the same page the attorney appointed as guardian ad litem was asked whether he had any communication with respondent, and he replied: "No I haven't." The only intimation of any notice to respondent was the statement by the master in his report that he mailed a notice of the filing of the report to respondent at the address given at Camp Hood, Texas, and suggested that respondent communicate with the guardian ad litem if he so desired. There is nothing to show that even this late notice was received by respondent.

So far as the present record is concerned, there is nothing to show that respondent is not overseas or to place upon him any moral obligation to request a stay of proceedings in the event that he wishes to contest this action. It would be manifestly unfair to a man in service to grant a divorce under these circumstances and such action would be an abuse of the discretion vested in the court under the Soldiers' and Sailors' Civil Relief Act. See Fister v. Bollinger, supra.

Furthermore, such action would expose libellant to a dangerous situation. Under subsection 5 of section 200 of the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C. §520 it is provided that if any judgment shall be rendered in any action where there has been a default in appearance by any person in military service, and it shall appear that such person was prejudiced by reason of his military service in making his defense thereto, such judgment may, upon application made by such person not later than 90 days after termination of such service, be opened by the court and such defendant let in to defend the action, provided it is made to appear that defendant has a meritorious or legal defense to the action. Based upon this provision it was stated in Patterson v. Patterson, 46 D. & C. 150, 152 (1942), that a decree not in accord with the act will

not import that finality to which all parties are entitled. Likewise in Augustine v. Augustine, 32 Del. Co. 211 (1943), Judge MacDade points out the method by which divorces may be obtained from men in military service but points out (p. 212) that where respondent does not appear "the parties take their chances under a decree granted under such circumstances." Judge MacDade concludes his opinion (p. 213) with a pertinent caution: "Beware: More haste less speed".

If a decree were granted on the present record and libellant should later decide to remarry, she would be exposed to the danger that respondent, after termination of his military service, might apply to the court to reopen this divorce proceeding. If he successfully defended the action the subsequent marriage would be void. Consequently, the decree could not be regarded as a final decree until that time.

We are inclined to believe that a decree in divorce may be granted against a person in military service upon whom service is secured by publication, or who has not appeared, and for whom an attorney has been appointed, providing certain facts clearly appear of record. It must appear that respondent had actual knowledge of the pendency of the divorce proceedings; that he was within the territorial limits of the United States; and that he was not prevented by his military service from defending the action or from applying for a stay of proceedings. Without the existence of these facts a decree would be unjust to the service man and would be nothing more than a snare to libellant.

And now, June 30, 1945, the record in the above case is referred back to the master for the purpose of giving libellant an opportunity to present additional testimony if she so desires. It is suggested that it would be proper for the guardian ad litem appointed for respondent to communicate with respondent, if possible, to ascertain his wishes.